**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

JAMES D. BALE, as Personal Representative of the
ESTATE OF TYLER A. BALE, Deceased,

　　　　　　　　　　　　　　　　　　　　　　Case No. 1:20-cv-113

　　　　　　　Plaintiffs,

v.

HAMILTON COUNTY, a Municipal Entity, HAMILTON
COUNTY SHERIFF, SHERIFF MARK BOWEN,
HAMILTON OFFICER ROBERT PONTIUS, OFFICER
ANTHONY CHAVEZ, OFFICER CHRISTOPHER LAND,
OFFICER GALEN HART, OFFICER MATTHEW
LAWSON, OFFICER CHRISTOPHER SANTIAGO,
OFFICER EL HADJI NDLAYE, TIM REED, CHRISTINA
BARR, KAREN HOOD, LAURENE JOHNSON, RONNI
HAINES, ROBYN GAUTHIER, MICHAEL PERSON,
M.D., and CORIZON HEALTH, INC., d/b/a CORIZON,
LLC,

　　　　　　　Defendants.　　　　　　　　　Jury Trial Demanded

_____/

**COMPLAINT**

　　　Plaintiffs, JAMES D. BALE, as Personal Representative of the ESTATE OF

TYLER A. BALE, Deceased, by and through their attorneys, FIEGER, FIEGER,

KENNEY & HARRINGTON, P.C., state the following for their Complaint against the

above-named Defendants:

**JURISDICTION**

　　　1.　　　This is a civil action brought pursuant to the Civil Rights Act, 42 U.S.C. §

1981, *et seq.*, seeking monetary and punitive damages against Defendants under 42 U.S.C.

§ 1983, and costs and attorney fees under 42 U.S.C. § 1988, for violations of Plaintiffs'

rights under the Eighth and/or Fourteenth Amendments to the United States Constitution.

2.      This court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343(a)(3), 1343(a)(4) and 42 U.S.C. § 1983.

3.      The amount in controversy exceeds seventy-five thousand ($75,000) dollars, excluding interest, costs, and attorney fees.

**VENUE**

4.      Venue lies in the Southern District of Indiana pursuant to 28 § U.S.C. 1391(d). The events took place within Hamilton County, Indiana, which is located within the jurisdiction of the United States District Court for the Southern District of Indiana.

**PARTIES**

5.      Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.      At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, was a pretrial detainee incarcerated at the Hamilton County Jail in Noblesville, Indiana on January 10, 2018, having been booked on a criminal charge and remanded to the custody of the Hamilton County Jail pending further court action.

7.      Plaintiff, JAMES D. BALE, is the Personal Representative of the ESTATE OF TYLER A. BALE, Deceased, and resident agent, who resides in Unionville, Indiana.

8.      At all times relevant hereto, Defendant, HAMILTON COUNTY, was a political subdivision of the State of Indiana, duly organized in carrying on governmental functions in the County of Hamilton, State of Indiana, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Hamilton County Jail.

9.      At all times relevant hereto, Defendant, HAMILTON COUNTY SHERIFF (also referred to as "Hamilton County Sheriff's Department"), was the duly appointed

constitutional office of sheriff in Delaware County, duly organized in carrying on governmental functions in the County of Hamilton, State of Indiana, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Hamilton County Jail.

10.   At all times relevant hereto, Defendant SHERIFF MARK BOWEN, was the Sheriff appointed to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

11.   At all times relevant hereto, Defendant ROBERT PONTIUS, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

12.   At all times relevant hereto, Defendant ANTHONY CHAVEZ, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

13.   At all times relevant hereto, Defendant CHRISTOPHER LAND, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton

County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

14.     At all times relevant hereto, Defendant GALEN HART, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

15.     At all times relevant hereto, Defendant MATTHEW LAWSON, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

16.     At all times relevant hereto, Defendant CHRISTOPHER SANTIAGO, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

17.     At all times relevant hereto, Defendant EL HADJI NDLAYE, was a Hamilton County Sheriff's Department Correctional Officer assigned to the Hamilton County Jail who was acting under color of state law within the course and scope of his employment with the Hamilton County Sheriff's Department and was acting under the color and pretense of ordinances, regulations, laws and customs of Hamilton County, and is being sued in his individual capacity.

18.     At all times relevant hereto, Defendant TIM REED, was a Registered Nurse working at the Hamilton County Jail who was acting in the course and scope of his employment with the Hamilton County Sheriff's Department and/or Corizon, contracted by the Hamilton County Jail and is being sued in his individual capacity.

19.     At all times relevant hereto, Defendant CHRISTINA BARR, was a Registered Nurse working at the Hamilton County Jail who was acting in the course and scope of her employment with the Hamilton County Sheriff's Department and/or Corizon contracted by the Hamilton County Jail and is being sued in her individual capacity.

20.     At all times relevant hereto, Defendant KAREN HOOD, was a Licensed Practical Nurse working at the Hamilton County Jail who was acting in the course and scope of her employment with the Hamilton County Sheriff's Department and/or Corizon contracted by the Hamilton County Jail and is being sued in her individual capacity.

21.     At all times relevant hereto, Defendant LAURENE JOHNSON, was a Licensed Practical Nurse working at the Hamilton County Jail who was acting in the course and scope of her employment with the Hamilton County Sheriff's Department and/or Corizon contracted by the Hamilton County Jail and is being sued in her individual capacity.

22.     At all times relevant hereto, Defendant RONNI HAINES, was a Licensed Practical Nurse working at the Hamilton County Jail who was acting in the course and scope of her employment with the Hamilton County Sheriff's Department and/or Corizon contracted by the Hamilton County Jail and is being sued in her individual capacity.

23.     At all times relevant hereto, Defendant ROBYN GAUTHIER, was a Registered Nurse working at the Hamilton County Jail who was acting in the course and scope of her employment with the Hamilton County Sheriff's Department and/or Corizon contracted by the Hamilton County Jail and is being sued in her individual capacity.

24.     At all times relevant hereto, Defendant MICHAEL PERSON, M.D., was a Medical Doctor working at the Hamilton County Jail who was acting in the course and scope of his employment with the Hamilton County Sheriff's Department, and/or  Corizon contracted by the Hamilton County Jail and is being sued in his individual capacity.

25.     At all times relevant hereto, Defendants CORIZON HEALTH, INC. d/b/a CORIZON, LLC. [hereinafter, referred to as "CORIZON"] was an Incorporated business contracted by Hamilton County to source and provide medical personnel to work at the Hamilton County Jail, and one of its functions was to organize, operate, staff, train, and supervise all medical personnel working at the Hamilton County Jail.

**FACTUAL STATEMENT**

26.     Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

27.     Upon all information and belief, Plaintiffs' Decedent, TYLER A. BALE, was a thirty-three-year-old, pre-arraignment detainee incarcerated in the County Jail of Hamilton County, Indiana.

28.     Upon information and belief, Fishers Police Department Officer Lathan arrested and detained Plaintiffs' Decedent, TYLER A. BALE stemming from a probation violation.

29.     TYLER A. BALE was booked by Officer Souder at or around 4:06 pm on Wednesday, January 10, 2018 at Hamilton County Jail.

30.     The booking process included the completion of a variety of Hamilton County Sheriff Questionnaires which specifically inquire into the inmate's use and/or withdrawal from drugs and any health or medical concerns.

31.     During this process, TYLER A. BALE completed the Hamilton County Jail's Questionnaire, making it known that he had prescribed medications he was taking regularly for his diagnosed Paranoid Schizophrenia and Crohn's Disease, and that he had dietary restrictions.

32.     At age twelve, TYLER A. BALE was diagnosed with Crohn's Disease and later developed Paranoid Schizophrenia at age twenty-two.

33.     At all times relevant hereto, during the booking process, TYLER A. BALE clearly identified his medications, including Prednisone, Lomotil and Risperdal, as well as the prescribing doctor and the pharmacy where the medicine came from.

34.     At all times relevant hereto, TYLER A. BALE, was charted as "High Risk" for his mental condition.

35.     According to Hamilton County Jail Protocol, Plaintiffs' Decedent, TYLER A. BALE, was placed in the Mental Health Unit for observation.

36.     In the early morning on Thursday, January 11, 2018, at 3:27 a.m. TYLER A. BALE was visited by Defendant, LAURENE JOHNSON, LPN, at which time

TYLER A. BALE was vomiting to the degree which she was unable to obtain his vitals.

37.    At all times relevant hereto, Plaintiffs' Decedent informed Defendant, LAURENE JOHNSON, LPN, that he had Crohn's Disease and needed Prednisone and Lomotil.

38.    Upon information and belief, no medication was provided to Plaintiffs' Decedent, TYLER A. BALE, at that time.

39.    At all times relevant hereto, on Thursday, January 11, 2018, at 7:44 a.m., Defendant, MICHAEL PERSON, MD, approved a six-day regimen of Librium (a sedative) for Plaintiffs' Decedent's alcohol withdrawals, but no other medications TYLER A. BALE needed for his Crohn's Disease or Schizophrenia.

40.    Upon information and belief, Plaintiffs' Decedent, TYLER A. BALE, made his first official medication request to manage his Crohn's Disease on January 13, 2018.

41.    At all times relevant hereto, on Saturday, January 13, 2018, at 5:50 p.m., Defendant, ROBYN GAUTHIER, denied Plaintiffs' Decedent, TYLER A. BALE's, medication from being administered to him.

42.    At all times relevant hereto, Defendant, ROBYN GAUTHEIR, specifically denied the use of Prednisone and Lomotil, but approved Risperdal, with no explanation as to why TYLER A. BALE's other prescriptions were excluded.

43.    At all times relevant hereto, on Sunday, January 14, 2018, at 11:10 a.m., Plaintiffs' Decedent, TYLER A. BALE, was seen by Defendant, ROBYN GAUTHIER, who cleared him from the Mental Health Unit to be placed in general population.

44.     At all times relevant hereto, on Monday, January 15, 2018, at 8:30 a.m., Plaintiffs' Decedent, TYLER A. BALE, was seen by Defendant, KAREN HOOD, LPN, where he, again, requested a few doses of Prednisone to reduce his bowel inflammation.

45.     At all times relevant hereto, both Defendants, KAREN HOOD and MICHAEL PERSON, M.D., were aware of TYLER A. BALE's diagnosis of Crohn's Disease and his continued requests for medication to help manage it.

46.     Upon information and belief, Plaintiffs' Decedent, TYLER A. BALE, was then approved to take only diphenoxylate (antidiarrhea medication) but advised that he must supply his own medication.

47.     At all times relevant hereto, on Tuesday, January 16, 2018 at 9:19 a.m., Plaintiffs' Decedent, TYLER A. BALE, sent a medical request which Defendant, TIM REED, received stating, "I have Crohn's, I am attempting to switch to the Kosher Diet. The Dr knows I might need prednisone its w you."

48.     That afternoon, in response to TYLER A. BALE's request, Defendant TIM REED replied, "The kosher diet is not provided by the medical department. That is obtained through chaplains."

49.     At all times relevant hereto, later that Tuesday evening, at 5:13 p.m., TYLER A. BALE sent a second medical request that day in which he notified medical staff that he was having a Crohn's reaction due to his diet which required medication. "Please bring 15mg Prednisone with meds tonight."

50.     Once more, in response to TYLER A. BALE's request, Defendant TIM REED refused to assist, replying on Wednesday morning, January 17, 2018, "Meds are ordered and dosed by the jail physician. He did order meds for you."

51.     At all times relevant hereto, on Wednesday, January 17, 2018, at 10:52 a.m., Plaintiffs' Decedent, TYLER A. BALE, sent a third medical request in which he requested a diet change; his current diet was causing severe inflammation and was causing him to have rapid and frequent emptying.

52.     At all times relevant hereto, Defendant, TIM REED, replied to TYLER A. BALE's request stating, "this is up to the Physician. We are limited on what diets we can provide. We are not changing your diet at this time, per the jail Dr."

53.     At all times relevant hereto, on Thursday, January 18, 2018 Plaintiffs' Decedent, TYLER A. BALE, made a fourth medical request stating he would like a doctor's appointment.

54.     In addition to the appointment request, TYLER A. BALE, also requested that the medical staff find his Lomotil, as his hemorrhoids and fistulas were getting progressively worse due to his stool being like water.

55.     At all times relevant hereto, Defendant, TIM REED, once again showed complete indifference to the obvious medical need of Plaintiffs' Decedent, TYLER A. BALE, and more concerned with proper forms being completed by apathetically responding, "Sick calls are to be submitted on sick call request forms."

56.     At all times relevant hereto, on Saturday, January 20, 2018, at 3:51 a.m., Plaintiffs' Decedent, TYLER A. BALE, was seen by Defendant, RONNI HAINES, LPN, where he again complained of vomiting and diarrhea.

57.     Upon information and belief, since being booked on January 10, 2018, Plaintiffs' Decedent, TYLER A. BALE, experienced continuous abdominal pain, vomiting and severe diarrhea.

58.     It was on that Saturday, January 20, 2018 where Plaintiffs' Decedent, TYLER A. BALE, requested to be taken to the hospital to receive intravenous therapy (IV) medication for his Crohn's Disease.

59.     At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, also requested that the medical staff, "Call my doctor, I'm his patient."

60.     At all times relevant hereto, Defendant, RONNIE HAINES, LPN, refused Plaintiffs' Decedent, TYLER A. BALE's request to be taken to the hospital and instead only charted that he was tachycardic, his skin was gooseflesh, suffering from tremors, and ran a risk of dehydration.

61.     Defendant, RONNIE HAINES, LPN, moved TYLER A. BALE to the Mental Health Unit for observation and Defendant, MICHAEL PERSON, MD, was notified of TYLER A. BALE's quickly decreasing condition.

62.     At all times relevant hereto, on Sunday, January 21, 2018 at 5:02 a.m., Defendant, LAURENE JOHNSON, LPN, performed a follow-up visit with Plaintiffs' Decedent, TYLER A. BALE.

63.     During the visit, TYLER A. BALE's vital signs were noticeably dropping, and he presented with severe hypotension with his Blood Pressure reading a shocking 78/47 mmHg.

64.     Plaintiffs' Decedent, TYLER A. BALE, had to be transported by wheelchair due to lack of mobility from his body's weakness and he was demonstrating the beginning signs of confusion.

65.     At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, continued to plead for Prednisone, and continued to be deprived of the medication his Crohn's Disease required.

66.     Instead of providing the medication, Defendant, LAURENE JOHNSON, LPN, charted that TYLER A. BALE was dehydrated, alert and verbally confrontational, and merely encouraged him to drink clear fluids.

67.     At all times relevant hereto, Defendant, LAURENE JOHNSON, LPN, knew that TYLER A. BALE was suffering from a Crohn's flare and needed immediate hospitalization for emergency treatment.

68.     This immediate need for hospitalization for TYLER A. BALE was apparent upon checking his vitals, due to TYLER A. BALE's dangerously low blood pressure, again, reading 78/47 mmHg.

69.     In the early hours on January 21, 2018, Defendant, LAURENE JOHNSON, LPN, failed to properly address TYLER A. BALE's emergency need for medical care based on his vitals and physical condition, and instead left him in his cell in the throes of a readily apparent medical emergency.

70.     At all times relevant hereto, shortly thereafter at 5:51 a.m., Defendant, LAURENE JOHNSON, LPN, was called to check on Plaintiffs' Decedent, TYLER A. BALE, as his cellmate notified officers that TYLER A. BALE had passed out while filling his water bottle.

71.     During this visit, Defendant, LAURENE JOHNSON, LPN, failed to properly assess TYLER A. BALE's vital signs, completely disregarding the clear need to evaluate and monitor his vitals, or more specifically, his blood pressure.

72. The only measure Defendant, LAURENE JOHNSON, LPN, took at this time was TYLER A. BALE's blood sugars, which read at an undeniably low-level at 69 mg/dL.

73. At all times relevant hereto, Defendant, LAURENE JOHNSON, LPN, charted that Plaintiffs' Decedent, TYLER A. BALE's skin was pallor and moist, and diagnosed him with acute borderline hypoglycemia related to emesis.

74. At all times relevant hereto, Defendant, LAURENE JOHNSON, LPN, once more did not show concern for TYLER A. BALE's health, documenting a follow-up visit to be completed only later that evening, and once again, left TYLER A. BALE in his cell in the throes of a readily apparent medical emergency.

75. At all times relevant hereto, just an hour later, at 7:04 a.m., on Sunday, January 21, 2018, Plaintiffs' Decedent, TYLER A. BALE, passed out a second time and his cellmate called for medical assistance.

76. At all times relevant hereto, KAREN HOOD, LPN, was first to arrive and asked Plaintiffs' Decedent, TYLER A. BALE, if he could move to his bed.

77. Unable to do so himself, Officer Defendants, CHRISTOPHER SANTIAGO and EL HADJI NDLAYE, moved Plaintiffs' Decedent, TYLER A. BALE, to his bed and sat him up for evaluation.

78. At all times relevant hereto, Defendant, KAREN HOOD, LPN, checked Plaintiffs' Decedent, TYLER A. BALE's vitals, his blood pressure remained hypotensive at 112/52 mmHg and his blood sugars had dropped to dangerous levels—37 mg/dL—confirming that TYLER A. BALE's condition was a serious medical emergency requiring immediate medical intervention.

79.     At all times relevant hereto, Defendant, KAREN HOOD, LPN, retrieved juice from the kitchen and Officer Defendant, ANTHONY CHAVEZ, assisted Plaintiffs' Decedent, TYLER A. BALE, in drinking the juice.

80.     At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, was unable to sit independently and required officers' aid to reposition him to sit upright.

81.     At all times relevant hereto, TYLER A. BALE was experiencing an emergency medical episode of which Defendant KAREN HOOD, LPN, Defendant CHRISTOPHER SANITAGO, Defendant ANTHONY CHAVEZ, and Defendant EL HADJI NDLAYE, were aware and were unsympathetic toward TYLER A. BALE's medical emergency by not transporting him to the hospital and/or calling for Emergency Medical Services (EMS).

82.     At all times relevant hereto, Defendant, KAREN HOOD, LPN, inappropriately advised that Plaintiffs' Decedent, TYLER A. BALE, needed to be transported to a padded cell.

83.     Upon information and belief, transport to the hospital was not mentioned or discussed, and TYLER A. BALE was transferred to the padded cell, irrespective of the evident medical emergency.

84.     At all times relevant hereto, Officer Defendants, EL HADJI NDLAYE, ANTHONY CHAVEZ, and MATTHEW LAWSON, placed Plaintiffs' Decedent, TYLER A. BALE, in a wheelchair without restraints to keep him positioned properly, and prepared him for transport to the padded cell.

85.     At all times relevant hereto, TYLER A. BALE was experiencing an emergency medical episode of which Defendant KAREN HOOD, LPN, Defendant

ANTHONY CHAVEZ, Defendant MATTHEW LAWSON, and Defendant EL HADJI NDLAYE, were aware and were deliberately indifferent toward TYLER A. BALE's medical emergency.

86.     At all times relevant hereto, once TYLER A. BALE was in the wheelchair, Defendant, CHRISTINA BARR, RN, tried to get Plaintiffs' Decedent, TYLER A. BALE, to respond with no avail.

87.     Knowing this, Defendant, CHRISTINA BARR, RN, then placed glucose paste underneath the unresponsive TYLER A. BALE's tongue, but it was ineffective and only resulted in the paste spilling out of his mouth.

88.     At all times relevant hereto, while being transferred to the padded cell, Plaintiffs' Decedent, TYLER A. BALE, collapsed out of the wheelchair and slumped onto the jail floor.

89.     Defendants, CHRISTINA BARR, RN, and ROBERT PONTIUS, then attempted to place Plaintiffs' Decedent, TYLER A. BALE, back in the wheelchair, but were unsuccessful, as he remained unresponsive and his body, limp.

90.     At all times relevant hereto, Defendants CHRISINA BARR, RN, and ROBERT PONTIUS, searched for a pulse on TYLER A. BALE, but were unable to locate one.

91.     Defendants, MATTHEW LAWSON, GALEN HART and ROBERT PONTIUS, performed cardiopulmonary resuscitation (CPR) and performed chest compressions on TYLER A. BALE.

92.     At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, began to vomit, requiring him to be rolled onto his side numerous times.

93.    At all times relevant hereto, CPR was performed by Defendant, KAREN HOOD, LPN, until Noblesville Fire Department arrived and took over TYLER A. BALE's medical care until his arrival at Riverview Hospital.

94.    After many attempts to revive Plaintiffs' Decedent, TYLER A. BALE, by the Noblesville Fire Department and hospital staff, resuscitation efforts ended, and TYLER A. BALE was declared dead at 8:02 am on Sunday, January 21, 2018.

95.    At the time of booking at Hamilton County Jail and during the ten days leading up to his death, TYLER A. BALE clearly specified on numerous occasions that he suffered from Crohn's Disease and that he required medication; however, Defendants LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER, and MICHAEL PERSON, M.D., denied TYLER A. BALE the necessary medical care he knew he required and pleaded with them for, and instead Defendants LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER, and MICHAEL PERSON, M.D., turned a blind eye to his readily apparent emergency medical condition.

96.    At all times relevant hereto, TYLER A. BALE vomited and/or expelled diarrhea in extreme frequency coupled with unmistakable physical, gastrointestinal, cognitive and mood symptoms evident of a medical emergency.

97.    At all times relevant, the medical staff at the Jail was trained not to believe anything the inmates said or reported. Specifically, the medical staff at the Jail was trained not to believe the inmates' statements regarding their medical condition.

98.    At all times relevant, the medical staff at the jail as not provided any training with regard to the jail's policies and procedures, was not provided copies of the Jail's

policies and procedures and was not shown where to locate copies of the Jail's policies and procedures.

99.   At all times relevant, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY, through their appointed officials, employees, agents and/or representatives, knew or should have known that the medical staff at the Jail was trained not to believe the inmates' statements regarding their medical condition, that the medical staff would refuse to evaluate the inmates, assess blood pressure, assess vital signs or otherwise investigate the inmates' complaints regarding medical issues; and, that the medical staff was not provided any training with regard to the Jail's policies and procedures, was not provided copies of the Jail's policies and procedures, and was not shown where to locate copies of the Jail's policies and procedures. Therefore, as a matter of de facto policy and procedure, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY, permitted same and encouraged it in terms of appropriate training and supervision.

100.   At all times relevant hereto, HAMILTON COUNTY SHERIFF, HAMILTON COUNTY and/or CORIZON participated in training and/or encouraging the medical staff at the Jail not to believe the inmates' statements regarding their medical condition; training and/or encouraging the medical staff to refuse to evaluate the inmates, assess blood pressure, assess vital signs or otherwise investigate the inmates' complaints regarding medical issues; refused to provide the medical staff with any training with regard to the jail policies and procedures; refused to provide the medical staff with copies of the Jail's policies and procedures; and refused to show the medical staff where to locate copies of the Jail's policies and procedures. Accordingly, HAMILTON COUNTY SHERIFF,

HAMILTON COUNTY and/or CORIZON implicitly authorized, approved, or knowingly acquiesced in the inferior and substandard treatment of inmates with serious medical needs and knew or should have known that such treatment would deprive an individual of a constitutional right.

101.    Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY refused to discipline medical staff at the Jail, failed to fully investigate inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way, and, thus, tacitly encouraged such behavior. In doing so, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY, condoned, ratified or encouraged the Jail medical staff to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

102.    At all times relevant hereto, the corrections officers at the Jail were trained not to believe anything that the inmates said or reported. Specifically, the corrections officers were trained not to believe the inmates' statements regarding their medical condition and thereby deliberately ignoring the inmates' serious medical needs.

103.    At all times relevant, the corrections officers were not provided any training with regard to the Jail's policies and procedures, were not provided copies of the Jail's policies and procedures and were not shown where to locate copies of the Jail's policies and procedures.

104.   At all times relevant hereto, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY, through its appointed officials, employees, agents and/or representatives, knew or should have known that the corrections officers at the Jail were trained not to believe anything that the inmates said or reported and the corrections officers at the Jail were trained not to believe the inmates' statements regarding their medical condition. HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY also were well-aware of the fact that the corrections officers were not provided any training with regard to the Jail's policies and procedures, were not provided copies of the Jail's policies and procedures and were not shown where to locate copies of the Jail's policies and procedures. Therefore, as a matter of de facto policy and procedure, HAMILTON COUNTY SHERIFF and/or HAMILTON COUNTY permitted same and encouraged it in terms of appropriate training and supervision.

105.   Despite knowledge of TYLER A. BALE's Crohn's Disease and current signs and symptoms, each and every Defendant failed to properly examine, observe, or provide appropriate medical treatment prior to TYLER A. BALE's death contrary to their duties outlined in the Constitution of the United States.

106.   At all times relevant hereto, each and every Defendant failed to timely and/or appropriately perform cell checks to observe and/or monitor TYLER A. BALE for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by TYLER A. BALE.

107.   The Hamilton County Jail's Mental Health Unit is equipped with visual monitoring systems, and all times relevant hereto, TYLER A. BALE was within view of the monitoring system.

108.    At all times relevant hereto, each and every Defendant was duty-bound and failed to monitor said equipment to detect events such as medical episodes, which each and every Defendant improperly, unlawfully, and otherwise failed to do so, and therefore failed to detect the escalating medical episode experienced by TYLER A. BALE.

109.    At all times relevant hereto, each and every Defendant was duty-bound and failed to check, observe, and/or monitor the cell occupied by TYLER A. BALE for indications of the existence of conditions or situations that may require intervention, namely the ongoing emergency medical episode suffered by TYLER A. BALE.

110.    At all times relevant hereto, over the course of his incarceration at the Hamilton County Jail, TYLER A. BALE was experiencing a medical episode and in such a fashion that was highly evident that his health was rapidly deteriorating.

111.    At all times relevant hereto, TYLER A. BALE lost eighteen pounds in the ten days he was incarcerated due to his Crohn's flare and repeatedly being denied the treatment both he and Defendants knew was required.

112.    At all times relevant hereto, TYLER A. BALE was familiar with how to treat his Crohn's and was very involved with his doctors over the prior 21 years with how to best manage his disease and what the best regimen would be.

113.    At all times relevant hereto, TYLER A. BALE's symptoms were severe and obvious to his cellmate and others within the resident population who observed him, all of whom recognized the necessity of immediate medical attention.

114.    At all times relevant hereto, each and every Defendant knew TYLER A. BALE was suffering from a serious, diagnosed medical condition which required

immediate medical care and treatment, yet ignored TYLER A. BALE amounting to deliberate indifference in violation of TYLER A. BALE's constitutional rights.

115.    At all times relevant hereto, each and every Defendant knew or should have known of TYLER A. BALE's ailing state and deteriorating condition.

116.    At all times relevant hereto, each and every Defendant failed to initiate close observation of TYLER A. BALE, and/or take proper precautions to protect him, and/or take steps to properly and adequately monitor him.

117.    Each and every Defendant improperly, unlawfully, and otherwise ignored TYLER A. BALE and left him in the cell without actual monitoring until his cellmate called for immediate medical attention.

118.    TYLER A. BALES's cause of death as determined by the medical examiner was complications of hypoglycemia (low blood sugar) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

119.    Defendants are not entitled to governmental immunity and/or qualified immunity.

120.    All named Defendants were deliberately indifferent to TYLER A. BALE's serious medical condition which deprived him of his constitutional rights to medical attention.

### COUNT I
### 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE
### DEFENDANT LAURENE JOHNSON, ONLY

121.    Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

122.     As a citizen of the United States and pretrial detainee at the Hamilton County Jail located in the State of Indiana, Plaintiffs' Decedent, TYLER A. BALE, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Indiana and of the United States.

123.     Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

124.      At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of his health and well-being.

125.     The actions and omission of acts by Defendant LAURENE JOHNSON, LPN demonstrated a reckless disregard to Plaintiffs' Decedent, TYLER A. BALE's, serious medical needs that were so obvious a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to TYLER A. BALE and  caused constitutional deprivation of his individual rights including, but not limited to:

       a.  Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

       b.  Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

       c.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

d.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

e.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

f.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

g.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

h.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

i.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.  Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.  Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.  Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.   Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.   Any and all other breaches as they become known throughout the course of this litigation.

126.    The conduct of Defendant LAURENE JOHNSON, LPN, as described above, deprived Plaintiffs' Decedent, TYLER A. BALE, of his clearly established rights, privileges, immunities in violation of the Fourteenth Amendment of the Constitution of the United States.

127.    As a direct and proximate result of the actions and/or omissions Defendant LAURENE JOHNSON, LPN, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

128.    As a direct and proximate result of the acts and/or omissions of Defendant LAURENE JOHNSON, LPN, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

129.    The conduct of Defendant LAURENE JOHNSON, LPN was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

A.   Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States

Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

B.  Punitive damages;

C.  Reasonable medical, hospital, funeral and burial expenses;

D.  Conscious pain and suffering;

E.  Loss of financial support;

F.  Loss of service;

G.  Loss of gifts or other valuable gratuities;

H.  Loss of comfort, society and companionship;

I.  Reasonable attorney fees, costs and interest; and

J.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

## COUNT II
## 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE
### DEFENDANT KAREN HOOD, ONLY

130.    Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

131.    As a citizen of the United States and pretrial detainee at the Hamilton County Jail located in the State of Indiana, Plaintiffs' Decedent, TYLER A. BALE, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Indiana and of the United States.

132.    Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

{00826569.DOCX}                                           25

133.     At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of his health and well-being.

134.     The actions and omission of acts by Defendant KAREN HOOD, LPN, demonstrated a reckless disregard to Plaintiffs' Decedent, TYLER A. BALE's, serious medical needs that were so obvious a layperson would easily recognize the necessity for medical attention, which posed an obvious risk of substantial harm to TYLER A. BALE and  caused constitutional deprivation of his individual rights including, but not limited to:

    a. Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

    b. Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

    c. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

    d. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

    e. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

    f. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

    g. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

    h. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

    i. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.  Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.  Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.  Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.  Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.  Any and all other breaches as they become known throughout the course of this litigation.

135.    The conduct of Defendant KAREN HOOD, LPN as described above, deprived Plaintiffs' Decedent, TYLER A. BALE, of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States.

136.     As a direct and proximate result of the actions and/or omissions Defendant KAREN HOOD, LPN, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

137.     As a direct and proximate result of the acts and/or omissions of Defendant KAREN HOOD, LPN, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

138.     The conduct of Defendant KAREN HOOD, LPN, was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

    A.  Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

    B.  Punitive damages;

    C.  Reasonable medical, hospital, funeral and burial expenses;

    D.  Conscious pain and suffering;

    E.  Loss of financial support;

    F.  Loss of service;

    G.  Loss of gifts or other valuable gratuities;

    H.  Loss of comfort, society and companionship;

    I.  Reasonable attorney fees, costs and interest; and

    J.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§

1983 and 1988.

## COUNT III
## 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE
## DEFENDANTS TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN
## GAUTHIER and MICHAEL PERSON, M.D.
## ("HAMILTON COUNTY JAIL MEDICAL STAFF")

139.     Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

140.     As a citizen of the United States and pretrial detainee at the Hamilton County Jail located in the State of Indiana, Plaintiffs' Decedent, TYLER A. BALE, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Indiana and of the United States.

141.     Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

142.      At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of his health and well-being.

143.     The actions and omission of acts by Defendants TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER, and MICHAEL PERSON, M.D., [hereinafter, collectively referred to as "HAMILTON COUNTY JAIL MEDICAL STAFF"] demonstrated a reckless disregard to Plaintiffs' Decedent, TYLER A. BALE's, serious medical needs that were so obvious a layperson would easily recognize the

necessity for medical attention, which posed an obvious risk of substantial harm to TYLER

A. BALE and  caused constitutional deprivation of his individual rights including, but not

limited to:

a. Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

b. Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

c. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

d. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

e. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

f. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

g. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

h. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

i. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.  Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.  Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.  Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.  Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.  Any and all other breaches as they become known throughout the course of this litigation.

144.    The conduct of Defendants, HAMILTON COUNTY JAIL MEDICAL STAFF, as described above, deprived Plaintiffs' Decedent, TYLER A. BALE, of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States.

145.    As a direct and proximate result of the actions and/or omissions Defendants HAMILTON COUNTY JAIL MEDICAL STAFF, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

146.     As a direct and proximate result of the acts and/or omissions of Defendants HAMILTON COUNTY JAIL MEDICAL STAFF, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

147.     The conduct of Defendants, HAMILTON COUNTY JAIL MEDICAL STAFF, was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

    A.  Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

    B.  Punitive damages;

    C.  Reasonable medical, hospital, funeral and burial expenses;

    D.  Conscious pain and suffering;

    E.  Loss of financial support;

    F.  Loss of service;

    G.  Loss of gifts or other valuable gratuities;

    H.  Loss of comfort, society and companionship;

    I.  Reasonable attorney fees, costs and interest; and

    J.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

## COUNT IV
## 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE
## DEFENDANT OFFICERS, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHRISTOPHER SANTIAGO, and EL HADJI NDLAYE

148.    Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

149.    As a citizen of the United States and pretrial detainee at the Hamilton County Jail located in the State of Indiana, Plaintiffs' Decedent, TYLER A. BALE, was entitled to all rights, privileges, and immunities accorded to all incarcerated citizens of the State of Indiana and of the United States.

150.    Pursuant to the Fourteenth Amendment of the United States Constitution, at all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to be free from cruel and unusual punishment while a pretrial detainee under the custody and control of Defendants.

151.    At all times relevant hereto, Plaintiffs' Decedent, TYLER A. BALE, had a right to adequate and sufficient medical care and/or treatment such that his life would be preserved and he at all times would be free from needless unjustified and preventable pain, suffering, and deterioration of his health and well-being.

152.    The actions and omission of acts by Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHRISTOPHER SANTIAGO, and EL HADJI NDLAYE, demonstrated a reckless disregard to Plaintiffs' Decedent, TYLER A. BALE's, serious medical needs that were so obvious a layperson would easily recognize the necessity for

medical attention, which posed an obvious risk of substantial harm to TYLER A. BALE

and  caused constitutional deprivation of his individual rights including, but not limited to:

    a.  Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

    b.  Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

    c.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

    d.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

    e.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

    f.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

    g.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

    h.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

    i.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

    j.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

    k.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

    l.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

    m.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n. Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o. Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p. Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q. Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r. Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s. Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t. Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u. Any and all other breaches as they become known throughout the course of this litigation.

153.     The conduct of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, as described above, deprived Plaintiffs' Decedent, TYLER A. BALE, of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States.

154.     As a direct and proximate result of the actions and/or omissions Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of

mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

155.     As a direct and proximate result of the acts and/or omissions of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

156.     The conduct of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

    A.  Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

    B.  Punitive damages;

    C.  Reasonable medical, hospital, funeral and burial expenses;

    D.  Conscious pain and suffering;

    E.  Loss of financial support;

    F.  Loss of service;

    G.  Loss of gifts or other valuable gratuities;

    H.  Loss of comfort, society and companionship;

I.   Reasonable attorney fees, costs and interest; and

J.   Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

**COUNT V**
**42 U.S.C. § 1983 FAILURE TO TRAIN/SUPERVISE;**
**CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL RIGHTS; INADEQUATE POLICY**
**DEFENDANT HAMILTON COUNTY**

157.     Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

158.     The conduct of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant HAMILTON COUNTY.

159.     At all relevant times, Defendant, HAMILTON COUNTY, Sheriff Mark Bowen, Jail Commander Jason Sloderbeck, and Captain Dennis Quakenbush, (collectively "Hamilton County") had a custom, pattern, and/or practice of failing to supervise and/or train Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, and other staff in reasonable manner to prevent such conduct and in accordance with Indiana Department of Corrections Policies and Procedures.

160.     The failure of the HAMILTON COUNTY Defendants to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in similar misconduct was objectively unreasonable and demonstrated a

deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such a s was caused to Decedent.

161.     Defendant HAMILTON COUNTY was aware or should have been aware that Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE and its correction personnel would confront situations as described herein and that a substantial risk of harm existed, and was conscious of the risk of harm posed by Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

162.     At all times relevant hereto, there was a clear and persistent pattern of violations of the inmate's rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

163.     At all times relevant, the HAMILTON COUNTY, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the medical staff and/or corrections officers, as described in the preceding paragraphs, and HAMILTON COUNTY ratified the behavior and conduct of its employees including Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

164.     At all times relevant, Defendant, HAMILTON COUNTY, was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical

attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

165.     Upon all information and belief, Defendant, HAMILTON COUNTY and its policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

166.     Upon information and belief, it was the custom or practice of Defendant, HAMILTON COUNTY, to tolerate the correctional officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the correctional officers and/or Jail medical staff to continue to engage in the unlawful behavior.

167.     Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant HAMILTON COUNTY refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, HAMILTON COUNTY condoned, ratified, or encouraged the correction officers and jail medical staff to refuse to obtain medical treatment and to deliberately ignored the inmates' serious medical needs on numerous occasions as a matter of policy.

168.     Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant HAMILTON COUNTY, refused to discipline the medical staff at the Jail, failed to fully investigate

inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, HAMILTON COUNTY condoned, ratified, or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

169.     As a direct and proximate cause of Defendant, HAMILTON COUNTY's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, demonstrated a reckless disregard to TYLER A. BALE's serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical, which posed an obvious risk of substantial harm to TYLER A. BALE and caused constitutional deprivation of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States, including, but not limited to:

a. Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

b. Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

c. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

d. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

e.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

f.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

g.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

h.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

i.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.   Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.   Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.   Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.   Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.   Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.   Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.   Any and all other breaches as they become known throughout the course of this litigation.

170.   As a direct and proximate result of Defendant HAMILTON COUNTY's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

171.   As a direct and proximate result of Defendant HAMILTON COUNTY's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

172.   The conduct of HAMILTON COUNTY was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

A.   Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

B.   Punitive damages;

C.   Reasonable medical, hospital, funeral and burial expenses;

D.  Conscious pain and suffering;

E.  Loss of financial support;

F.  Loss of service;

G.  Loss of gifts or other valuable gratuities;

H.  Loss of comfort, society and companionship;

I.  Reasonable attorney fees, costs and interest; and

J.  Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

**COUNT VI**
**42 U.S.C. § 1983 FAILURE TO TRAIN/SUPERVISE;**
**CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL**
**RIGHTS; INADEQUATE POLICY**
**DEFENDANT HAMILTON COUNTY SHERIFF**

173.   Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

174.   The conduct of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant HAMILTON COUNTY SHERIFF DEPARTMENT.

175.   At all relevant times, Defendant, HAMILTON COUNTY SHERIFF DEPARTMENT, Sheriff Mark Bowen, Jail Commander Jason Sloderbeck, and Captain Dennis Quakenbush, (collectively "Hamilton County") had a custom, pattern, and/or practice of failing to supervise and/or train Defendant Officers, ROBERT PONTIUS,

ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, and other staff in reasonable manner to prevent such conduct and in accordance with Indiana Department of Corrections Policies and Procedures.

176.     The failure of the HAMILTON COUNTY SHERIFF DEPARTMENT Defendants to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such a s was caused to Decedent.

177.     Defendant HAMILTON COUNTY SHERIFF DEPARTMENT was aware or should have been aware that Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE and its correction personnel would confront situations as described herein and that a substantial risk of harm existed, and was conscious of the risk of harm posed by Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

178.     At all times relevant hereto, there was a clear and persistent pattern of violations of the inmate's rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

179.     At all times relevant, the HAMILTON COUNTY SHERIFF DEPARTMENT, through its appointed officials, employees, agents and/or representatives,

knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the medical staff and/or corrections officers, as described in the preceding paragraphs, and HAMILTON COUNTY SHERIFF DEPARTMENT ratified the behavior and conduct of its employees including Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

180.    At all times relevant, Defendant, HAMILTON COUNTY SHERIFF DEPARTMENT, was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

181.    Upon all information and belief, Defendant, HAMILTON COUNTY SHERIFF DEPARTMENT and its policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

182.    Upon information and belief, it was the custom or practice of Defendant, HAMILTON COUNTY SHERIFF DEPARTMENT, to tolerate the correctional officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the correctional officers and/or Jail medical staff to continue to engage in the unlawful behavior.

183.    Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant HAMILTON COUNTY

SHERIFF DEPARTMENT refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, HAMILTON COUNTY SHERIFF DEPARTMENT condoned, ratified, or encouraged the correction officers and jail medical staff to refuse to obtain medical treatment and to deliberately ignored the inmates' serious medical needs on numerous occasions as a matter of policy.

184.     Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant HAMILTON COUNTY SHERIFF DEPARTMENT, refused to discipline the medical staff at the Jail, failed to fully investigate inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, HAMILTON COUNTY SHERIFF DEPARTMENT condoned, ratified, or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

185.     As a direct and proximate cause of Defendant, HAMILTON COUNTY SHERIFF DEPARTMENT's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, demonstrated a

reckless disregard to TYLER A. BALE's serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical, which posed an obvious risk of substantial harm to TYLER A. BALE and caused constitutional deprivation of his clearly established rights, privileges, and immunities in violation of Fourteenth Amendment of the Constitution of the United States, including, but not limited to:

    a. Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

    b. Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

    c. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

    d. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

    e. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

    f. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

    g. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

    h. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

    i. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

    j. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

    k. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

    l. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m.  Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.  Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.  Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.  Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.  Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.  Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.  Any and all other breaches as they become known throughout the course of this litigation.

186.    As a direct and proximate result of Defendant HAMILTON COUNTY SHERIFF DEPARTMENT's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

187.     As a direct and proximate result of Defendant HAMILTON COUNTY SHERIFF DEPARTMENT's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

188.     The conduct of HAMILTON COUNTY SHERIFF DEPARTMENT was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

A.   Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

B.   Punitive damages;

C.   Reasonable medical, hospital, funeral and burial expenses;

D.   Conscious pain and suffering;

E.   Loss of financial support;

F.   Loss of service;

G.   Loss of gifts or other valuable gratuities;

H.   Loss of comfort, society and companionship;

I.   Reasonable attorney fees, costs and interest; and

J.   Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

**COUNT VII**
**42 U.S.C. § 1983 FAILURE TO TRAIN/SUPERVISE;**
**CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL**
**RIGHTS; INADEQUATE POLICY**
**DEFENDANT SHERIFF MARK BOWEN**

189.     Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

190.     The conduct of Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant SHERIFF MARK BOWEN.

191.     At all relevant times, Defendant, SHERIFF MARK BOWEN, Sheriff Mark Bowen, Jail Commander Jason Sloderbeck, and Captain Dennis Quakenbush, (collectively "Hamilton County") had a custom, pattern, and/or practice of failing to supervise and/or train Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, and other staff in reasonable manner to prevent such conduct and in accordance with Indiana Department of Corrections Policies and Procedures.

192.     The failure of the SHERIFF MARK BOWEN Defendants to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such a s was caused to Decedent.

193.     Defendant SHERIFF MARK BOWEN was aware or should have been aware that Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE and its correction personnel would confront situations as described herein and that a substantial risk of harm existed, and was conscious of the risk of harm posed by Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

194.     At all times relevant hereto, there was a clear and persistent pattern of violations of the inmate's rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

195.     At all times relevant, the SHERIFF MARK BOWEN, through its appointed officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the medical staff and/or corrections officers, as described in the preceding paragraphs, and SHERIFF MARK BOWEN ratified the behavior and conduct of its employees including Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE.

196.     At all times relevant, Defendant, SHERIFF MARK BOWEN, was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

197.     Upon all information and belief, Defendant, SHERIFF MARK BOWEN and its policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

198.     Upon information and belief, it was the custom or practice of Defendant, SHERIFF MARK BOWEN, to tolerate the correctional officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the correctional officers and/or Jail medical staff to continue to engage in the unlawful behavior.

199.     Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant SHERIFF MARK BOWEN refused to discipline the corrections officers, failed to fully investigate inmate allegations regarding the corrections officers refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, SHERIFF MARK BOWEN condoned, ratified, or encouraged the correction officers and jail medical staff to refuse to obtain medical treatment and to deliberately ignored the inmates' serious medical needs on numerous occasions as a matter of policy.

200.     Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant SHERIFF MARK BOWEN, refused to discipline the medical staff at the Jail, failed to fully investigate inmate allegations regarding the medical staff's refusal to obtain medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, SHERIFF MARK

BOWEN condoned, ratified, or encouraged the Jail medical staff and correction officers to refuse to obtain medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

201.    As a direct and proximate cause of Defendant, SHERIFF MARK BOWEN's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendant Officers, ROBERT PONTIUS, ANTHONY CHAVEZ, CHRISTOPHER LAND, GALEN HART, MATTHEW LAWSON, CHISTOPHER SANTIAGO, and EL HADJI NDLAYE, demonstrated a reckless disregard to TYLER A. BALE's serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical, which posed an obvious risk of substantial harm to TYLER A. BALE and caused constitutional deprivation of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States, including, but not limited to:

a. Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

b. Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

c. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

d. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

e. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

f.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

g.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

h.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

i.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n.   Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o.   Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p.   Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q.   Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r.   Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s.   Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

t.   Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

u.  Any and all other breaches as they become known throughout the course of this litigation.

202.    As a direct and proximate result of Defendant SHERIFF MARK BOWEN's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

203.    As a direct and proximate result of Defendant SHERIFF MARK BOWEN's custom or practice of tolerating the violation of federal rights the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

204.    The conduct of SHERIFF MARK BOWEN was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

A.  Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

B.  Punitive damages;

C.  Reasonable medical, hospital, funeral and burial expenses;

D.  Conscious pain and suffering;

E.   Loss of financial support;

F.   Loss of service;

G.   Loss of gifts or other valuable gratuities;

H.   Loss of comfort, society and companionship;

I.   Reasonable attorney fees, costs and interest; and

J.   Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.

**COUNT VIII**
**42 U.S.C. § 1983 FAILURE TO TRAIN/SUPERVISE;**
**CUSTOM OR PRACTICE OF TOLERATING THE VIOLATION OF FEDERAL**
**RIGHTS; INADEQUATE POLICY**
**DEFENDANT CORIZON HEALTH, INC. d/b/a CORIZON, LLC**
**("CORIZON")**

205.     Plaintiffs hereby reincorporate and restate each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

206.     The conduct of Defendant CORIZON, as described throughout, was performed under the color of law while Defendants were working for and with the authority of Defendant HAMILTON COUNTY.

207.     At all relevant times, Defendant, CORIZON, had a custom, pattern, and/or practice of failing to supervise and/or train Defendants, LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER, MICHAEL PERSON, M.D., and other staff in reasonable manner to prevent such conduct and in accordance with Indiana Department of Corrections Policies and Procedures.

208.     The failure of Defendant CORIZON to properly supervise and/or train its personnel or otherwise create and enforce a custom policy or procedure, who engaged in

similar misconduct was objectively unreasonable and demonstrated a deliberate indifference to incidents and complaints against its personnel and to the deprivation of clearly established rights of individuals, such as was caused to Decedent.

209.     Defendant CORIZON was aware or should have been aware that Defendants, LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER, MICHAEL PERSON, M.D. and its correction personnel would confront situations as described herein and that a substantial risk of harm existed and was conscious of the risk of harm posed by Defendants, LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER and MICHAEL PERSON, M.D.

210.     At all times relevant hereto, there was a clear and persistent pattern of violations of the inmate's rights to medical attention for serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

211.     At all times relevant, Defendant CORIZON, through its officials, employees, agents and/or representatives, knew or should have known that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for serious medical needs by the medical staff and/or corrections officers, as described in the preceding paragraphs, and CORIZON ratified the behavior and conduct of its employees including Defendants, LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER and MICHAEL PERSON, M.D.

212.     At all times relevant, Defendant, CORIZON, was on notice that there was a clear and persistent pattern of violations of the inmates' rights to medical attention for

serious medical needs by the Jail medical staff and/or corrections officers, as described in the preceding paragraphs.

213.    Upon all information and belief, Defendant, CORIZON, and its policy makers acquiesced in the corrections officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs.

214.    Upon information and belief, it was the custom or practice of Defendant, CORIZON, to tolerate the correctional officers' and/or Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, which allowed the correctional officers and/or Jail medical staff to continue to engage in the unlawful behavior.

215.    Upon information and belief, instead of suspending or disciplining the corrections officers for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant CORIZON refused to discipline the HAMILTON COUNTY JAIL MEDICAL STAFF, failed to fully investigate inmate allegations regarding the jail medical staff's refusal to perform medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, CORIZON condoned, ratified, or encouraged the jail medical staff to refuse to perform the required medical treatment and to deliberately ignored the inmates' serious medical needs on numerous occasions as a matter of policy.

216.    Upon information and belief, instead of suspending or disciplining the medical staff at the Jail for failing to address the inmates' complaints regarding medical issues and for deliberately ignoring serious medical needs, Defendant CORIZON, refused to discipline the medical staff at the Jail, failed to fully investigate inmate allegations

regarding the medical staff's refusal to perform proper medical treatment, looked the other way and, thus, tacitly encouraged such behavior. In doing so, CORIZON condoned, ratified, or encouraged the Jail medical staff to refuse to perform medical treatment and to deliberately ignore the inmates' serious medical needs on numerous occasions as a matter of policy.

217.    As a direct and proximate cause of Defendant, CORIZON's custom or practice of tolerating the violation of federal rights the Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Defendants, LAURENE JOHNSON, KAREN HOOD, TIM REED, CHRISTINA BARR, RONNI HAINES, ROBYN GAUTHIER and MICHAEL PERSON, M.D., demonstrated a reckless disregard to TYLER A. BALE's serious medical needs that were so obvious that even a layperson would easily recognize the necessity for medical, which posed an obvious risk of substantial harm to TYLER A. BALE and caused constitutional deprivation of his clearly established rights, privileges, and immunities in violation of the Fourteenth Amendment of the Constitution of the United States, including, but not limited to:

a.   Deliberately ignoring Plaintiffs' Decedent, TYLER A. BALE's, obvious serious medical needs and failing to obtain appropriate medical attention within a reasonable time frame;

b.   Depriving Plaintiffs' Decedent, TYLER A. BALE, of his necessary and prescribed medication;

c.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent gastrointestinal symptoms;

d.   Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent dehydration;

e. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALES's, readily apparent hypoglycemia symptoms;

f. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume food;

g. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, readily apparent inability to consume liquids;

h. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent vomiting;

i. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious persistent diarrhea;

j. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious weakness;

k. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious fatigue;

l. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE's, obvious abdominal cramping;

m. Failure to obtain medical attention for Plaintiffs' Decedent, TYLER A. BALE, who was obviously in the throes of a Crohn's flare;

n. Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by emergently transferring him to a hospital for medical treatment;

o. Failure to obtain treatment for Plaintiffs' Decedent, TYLER A. BALE, by administering the appropriate medical attention as required by jail policy for Care Level 3 inmates;

p. Failure to obtain intravenous nutrition, medication or treatment for Plaintiffs' Decedent, TYLER A. BALE;

q. Failure to provide close monitoring and supervision for Plaintiffs' Decedent, TYLER A. BALE;

r. Failure to obtain electrolyte replacement for Plaintiffs' Decedent, TYLER A. BALE;

s. Failure to provide glucose monitoring and/or hospitalization for Plaintiffs' Decedent, TYLER A. BALE;

      t.  Failure to provide cardiac monitoring and/or hospitalization for Plaintiff Decedent, TYLER A. BALE;

      u.  Any and all other breaches as they become known throughout the course of this litigation.

218.     As a direct and proximate result of Defendant CORIZON's custom or practice of tolerating the violation of federal rights the Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiffs' Decedent, TYLER A. BALE, suffered great physical pain, discomfort, loss of mental capacity, humiliation, degradation, anguish, and, ultimately, died from complications of hypoglycemia (low blood sugars) and hyponatremic dehydration (low sodium levels) due to primary acute adrenal gland insufficiency.

219.     As a direct and proximate result of Defendant CORIZON's custom or practice of tolerating the violation of federal rights the Jail medical staff's violation of the inmates' rights to medical attention for serious medical needs, Plaintiff sustained and is entitled to compensation for conscious pain and suffering of the Deceased, funeral, burial, and economic costs and/or damages, loss of support, loss of gifts and gratuities and loss of love, society and companionship.

220.     The conduct of CORIZON was and remains extreme and outrageous, subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiffs request the following relief;

      A.  Compensatory non-economic and economic damages including but not limited to all damages recoverable under the United States Constitution, 42 USC §1983, and the Indiana Wrongful Death Act;

      B.  Punitive damages;

      C.  Reasonable medical, hospital, funeral and burial expenses;

D.   Conscious pain and suffering;

E.   Loss of financial support;

F.   Loss of service;

G.   Loss of gifts or other valuable gratuities;

H.   Loss of comfort, society and companionship;

I.   Reasonable attorney fees, costs and interest; and

J.   Such other and further relief as appears reasonable and just under the circumstances and otherwise recoverable under 42 U.S.C. §§ 1983 and 1988.


Respectfully submitted,

Fieger, Fieger, Kenney & Harrington, P.C.


 *s/ James J. Harrington, IV., Esq.* (by Mark W. Sniderman, with permission)
James J. Harrington, IV (MI Bar No. P65351; Seeking Admission)
FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.
19390 W. Ten Mile Rd.
Southfield, MI  48075
(248) 355-5555
j.harrington@fiegerlaw.com


*s/ Mark W. Sniderman*
Mark W. Sniderman (26599-49)
FINDLING, PARK, CONYERS, WOODY & SNIDERMAN, P.C.
151 North Delaware Street, Suite 1520
Indianapolis, IN  46204
(317) 231-1100
(317) 231-1106 Fx
msniderman@findlingpark.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

JAMES BALE, as Personal Representative of the
ESTATE OF TYLER A. BALE, Deceased,

                                        Case No. 1:20-cv-113

           Plaintiff,

v.

HAMILTON COUNTY, a Municipal Entity,
HAMILTON COUNTY SHERIFF, OFFICER
ROBERT PONTIUS, OFFICER ANTHONY
CHAVEZ, OFFICER CHRISTOPHER LAND,
OFFICER GALEN HART, OFFICER MATTHEW
LAWSON, OFFICER CHRISTOPHER
SANTIAGO, OFFICER EL HADJI NDLAYE, TIM
REED, CHRISTINA BARR, KAREN HOOD,
LAURENE JOHNSON, RONNI HAINES, ROBYN
GAUTHIER, MICHAEL PERSON, M.D., and
CORIZON HEALTH, INC., d/b/a CORIZON, LLC,

           Defendants.

_____/

**PLAINTIFFS' DEMAND FOR TRIAL BY JURY**

      Plaintiffs, JAMES BALE, as Administrator for the ESTATE OF TYLER A. BALE,

Deceased, by and through their attorneys, FIEGER, FIEGER, KENNEY &

HARRINGTON, P.C., hereby request trial by jury in this matter.

Respectfully submitted,


_s/ James J. Harrington, IV., Esq._ (by Mark W. Sniderman, with permission)
James J. Harrington, IV (MI Bar No. P65351; seeking admission)
FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.
19390 W. Ten Mile Rd.
Southfield, MI  48075
(248) 355-5555
j.harrington@fiegerlaw.com


_s/ Mark W. Sniderman_
Mark W. Sniderman (26599-49)
FINDLING, PARK, CONYERS, WOODY & SNIDERMAN, P.C.
151 North Delaware Street, Suite 1520
Indianapolis, IN  46204
(317) 231-1100
(317) 231-1106 Fx
msniderman@findlingpark.com

_Attorneys for Plaintiffs_